IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COHEN, SEGLIAS, GREENHALL, PALLAS, & FURMAN, P.C. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-6183 |
| | : | |
| v. | : | |
| | : | |
| HESSERT CONSTRUCTION – PA, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ON MOTION TO DISMISS

**Baylson, J.** February 4, 2011

Plaintiff Cohen, Seglias, Greenhall, Pallas & Furman, P.C. ("Cohen Seglias") filed suit in Pennsylvania state court against Defendants Hessert Construction – PA, LLC ("Hessert – PA"), Hessert Construction – NJ, LLC ("Hessert – NJ"), Hessert Corporation, and William Hessert ("Hessert") (collectively, "Defendants") to collect unpaid legal fees. (Am. Compl., ECF No. 1, Ex. A.) Defendants removed the matter to this Court on the basis of diversity jurisdiction. (ECF No. 1.)

Presently before the Court is Defendants' Motion to Dismiss (Mot. to Dismiss, ECF No. 3.) Defendants seek dismissal because the Court lacks personal jurisdiction over them; Cohen Seglias's claims for unjust enrichment and quantum meruit are precluded by New Jersey law;[1] Hessert – PA was fraudulently joined; and Hessert Construction Group is a non-existent entity.

---

[1] Defendants contend that New Jersey law governs in this diversity action. (Mot. to Dismiss at 14-15.) Although Cohen Seglias does not dispute this contention, whether Pennsylvania or New Jersey law applies does not effect the Court's conclusion on Defendants' Motion. Therefore, the Court has no occasion to determine the applicable substantive law.

(Mot. to Dismiss at 1-2, 16.) For the following reasons, Defendants' Motion will be **denied**.

I. <u>**Factual and Procedural Background**</u>

According to the Amended Complaint and Cohen Seglias's Answer to Defendants' Motion, the underlying facts are as follows. Defendants, all New Jersey residents, retained Cohen Seglias, to provide legal services. (Am. Compl. ¶¶ 2-5, 7.) Cohen Seglias is based in Philadelphia, Pennsylvania, but has offices in other parts of Pennsylvania, West Virginia, and New Jersey. (Answer to Mot., ECF No. 6, at 2.)

In May or June 1999, Hessert contacted Cohen Seglias to discuss retaining the firm in various construction matters. (Answer to Mot. at 2.) Hessert then traveled to Cohen Seglias's Philadelphia office for further discussions and ultimately retained the firm. (Id.) Defendants agreed to pay Cohen Seglias for services rendered and costs advanced on Defendants' behalf. (Am. Compl. ¶ 7; Answer to Mot. at 2.) Cohen Seglias alleges that the parties' agreement was memorialized in a letter, but the firm has not yet located an executed copy of the agreement. (Am. Compl. ¶ 7.)

Cohen Seglias alleges that between the summer of 1999 and the spring of 2010, the firm represented Defendants in twenty-nine (29) matters. (Answer to Mot. at 2.) Over the course of the relationship, Cohen Seglias billed Defendants almost $700,000, and Defendants remitted more than $586,000 in payment. (Answer to Mot. at 2-3.) Cohen Seglias issued each invoice from its Philadelphia office, each invoice required payment be made to Philadelphia, and Defendants remitted each payment from New Jersey to Pennsylvania. (Id.)

In addition, throughout the representation, the firm placed phone calls and mailed correspondence from its Philadelphia office to Defendants in New Jersey. (Am. Compl. ¶ 9.)

Defendants, in turn, placed phone calls and sent correspondence to the firm from New Jersey, and some personnel attended meetings at Cohen Seglias's Philadelphia office. (Answer to Mot. at 3.) The unpaid invoices concern legal services rendered in several New Jersey lawsuits for the period November 2009 through April 2010, including one case in which the plaintiff named all Defendants. (Id. at 4.) For each of these matters, Cohen Seglias performed much of the work – including negotiations, legal research, and drafting of pleadings – in Philadelphia. (Am. Compl. ¶ 10; Answer to Mot. at 3-4.)

Despite repeated requests for payment of the unpaid invoices, Defendants did not pay. (Am. Compl. ¶ 14.) On October 25, 2010, Cohen Seglias filed the pending Amended Complaint in the Philadelphia Court of Common Pleas. Cohen Seglias asserts three theories for recovery: breach of contract, unjust enrichment, and quantum meruit. (Id. ¶¶ 15-25.)

On November 10, 2010, Defendants removed the matter to this Court on the basis of diversity jurisdiction. (ECF No. 1.) On December 3, 2010, Defendants filed the pending Motion to Dismiss. After having been granted an extension of time, Cohen Seglias timely responded. Each party filed a supporting affidavit, which will be discussed in more detail below.

## II. Jurisdiction and Legal Standards

### A. Jurisdiction and Venue

The Court has subject matter jurisdiction over this removed matter pursuant to 28 U.S.C. § 1332.[2] Venue is proper pursuant to 28 U.S.C. § 1441(a).

---

[2] In their Motion to Dismiss, Defendants argue that Hessert – PA was fraudulently joined to defeat diversity jurisdiction. As discussed in more detail below, Hessert – PA is a limited liability company whose only member, Cohen Seglias alleges, is a New Jersey citizen. Assuming the veracity of Cohen Seglias's allegations, and because an LLC's citizenship is determined by the citizenship of its members, the Court concludes that the parties are completely

B.  **Legal Standards**

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court is required to accept plaintiff's allegations as true and must construe disputed facts in plaintiff's favor. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). Once a defendant raises a jurisdictional defense, the plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper. Id. If the court does not hold an evidentiary hearing, as in this case,[3] the plaintiff need only establish a prima facie case of personal jurisdiction. Id; see also 4 Wright & Miller, Federal Practice and Procedure § 1067.6, at 558-59 (3d ed. 2002) (noting prima facie case will be sufficient even if parties produce competing affidavits). The plaintiff meets this burden by stating the bases for personal jurisdiction with reasonable particularity. See Mellon Bank East (PSFS), Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). If the plaintiff establishes its prima facie case, the burden shifts to the defendant to demonstrate that the exercise of personal jurisdiction is unreasonable. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 324 (3d Cir. 2007).

Defendants also assert that Cohen Seglias's claims for unjust enrichment and quantum meruit, and its claims against Hessert Construction Group, should be dismissed for failure to state a cause of action. Defendants do not attack the sufficiency of the pleadings; rather they attack the viability of the claims. In deciding a motion to dismiss pursuant to Federal Rule of

---

diverse and the amount in controversy exceeds $75,000. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (establishing limited liability company citizenship rule).

[3]    The Court has considerable leeway in determining the appropriate procedural method to resolve Defendants' jurisdictional defense. 5B Wright & Miller, Federal Practice and Procedure § 1351, at 305 (3d ed. 2004); see Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st Cir. 1995) (identifying three procedural options available to district court).

Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). The complaint survives a motion to dismiss if it contains sufficient allegations of the material elements necessary to state a plausible claim to relief. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 319 (3d Cir. 2010).

### III. Discussion

#### A. The Court has Personal Jurisdiction over Defendants

##### 1. Parties' Contentions

Defendants contend that the Court lacks general or specific personal jurisdiction over them. With regard to general jurisdiction, Defendants assert that none of the parties are Pennsylvania companies or citizens and that they do not conduct continuous or systematic business in Pennsylvania. (Mot. to Dismiss at 9-10.) As for specific jurisdiction, Defendants argue that its alleged contacts with Pennsylvania are not sufficient. (Id. at 10-13.) In particular, they contend that limited telephone contact and obligations to make payments into Pennsylvania do not establish the requisite minimum contacts. Further, Cohen Seglias's performance of services in Pennsylvania is unilateral activity that cannot establish Defendants' contacts with the forum. Finally, even if sufficient minimum contacts exist, Defendants argue a Pennsylvania forum is unreasonable because Pennsylvania has no interest in adjudicating the dispute. (Id. at 13-14.)

Cohen Seglias responds that it is pursuing a theory of specific jurisdiction only. (Answer to Mot. at 6.) It argues that the Court has jurisdiction over Defendants because Hessert traveled to Pennsylvania and initiated an ongoing, long-term relationship with a Pennsylvania entity;

-5-

Defendants had extensive communications with Cohen Seglias in Pennsylvania and sent all payments to Pennsylvania; Defendants are obligated to send payment for the outstanding invoices to Pennsylvania; and Cohen Seglias performed much of the contracted-for-services in Pennsylvania. (Id. at 7-8.) Further, Cohen Seglias suggests this Court's exercise of jurisdiction comports with due process. (Id. at 10-11.)

### 2. Parties' Affidavits

#### a. Hessert's Affidavit

In support of their Motion, Defendants submitted the affidavit of William Hessert. (Hessert Aff., Mot. to Dismiss, Ex. C.) Hessert declares that Defendants have no bank accounts or phone listings in Pennsylvania and they have not consented to jurisdiction in Pennsylvania. (Hessert Aff. ¶¶ 3-4.) Hessert asserts that Cohen Seglias has never undertaken any legal work on behalf of Hessert – PA; that most of Defendants' work is performed outside of Pennsylvania; and the entities other than Hessert – PA do not perform continuous and systematic work in Pennsylvania. (Id. ¶¶ 6-8.) Moreover, there is no entity or trade name "Hessert Construction Group." (Id. ¶ 18.)

Hessert also declares that New Jersey-licensed attorneys employed by Cohen Seglias represented Defendants in several New Jersey lawsuits. (Id. ¶¶ 9-15.) With regard to these matters, Defendants met with Cohen Seglias attorneys in New Jersey. (Id. ¶ 5.) Finally, Hessert cannot locate and denies personally signing a written fee agreement, and is not aware of anyone else signing on behalf of the entity Defendants. (Id. ¶¶ 16-17.)

#### b. Seglias's Affidavit

In response, Cohen Seglias submitted an affidavit from Edward Seglias, a partner in the

firm. (Seglias Aff., Answer to Mot., Ex. A.) Seglias declares that Hessert called his office in May or June 1999 to discuss Cohen Seglias's representation of Defendants. (Seglias Aff. ¶ 3.) He also asserts that Hessert traveled to Cohen Seglias's Philadelphia office for further discussions, at which time Hessert engaged Cohen Seglias's representation. (Id. ¶ 4.) From that time until the spring of 2010, Cohen Seglias represented Defendants in twenty-nine (29) matters, for which the firm billed Defendants almost $700,000. (Id. ¶¶ 5-6.) Defendants paid more than $586,000 of those fees, sending each payment to Philadelphia. (Id. ¶ 8.)

Seglias also asserts that some of Defendants' personnel attended meetings in Philadelphia and placed numerous phone calls and sent numerous letters or emails to firm attorneys in Philadelphia. (Id. ¶ 9.) Indeed, the outstanding invoices at the heart of this matter relate to work performed in five separate matters. (Id. ¶¶ 10-11.) For each of these matters, Defendants' personnel supplied information or sought legal advice from Cohen Seglias attorneys by phone, letter, or email. (Id. ¶¶ 12-13.) Although these cases were litigated in New Jersey, Cohen Seglias performed most of its work in Pennsylvania, including work prior to litigation. (Id. ¶¶ 14-15.) Further, Defendants were all named together in at least one of the New Jersey matters. (Id. ¶ 16.)

### 3. Legal Standards

District courts may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001); see Fed. R. Civ. P. 4(k)(1). Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-resident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment. Farino, 960

F.2d at 1221; see 42 Pa. Cons. Stat. § 5322(b) ("[T]he jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed . . . .").

Thus, this Court must determine whether Defendants have sufficient minimum contacts with Pennsylvania such that maintenance of the suit in this Court does not offend traditional notions of fair play and substantial justice. O'Connor, 496 F.3d at 316. These minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." Remick, 238 F.3d at 255 (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 109 (1987)). Thus, the analysis focuses on the non-resident defendant's contacts with the forum. See Metcalfe, 566 F.3d at 334.

There are two theories of personal jurisdiction: general jurisdiction and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Cohen Seglias is pursuing specific jurisdiction only and, therefore, the Court will focus on that theory. (See Answer to Mot. at 6.)

"[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Remick, 238 F.3d at 255 (quotation marks omitted); see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) ("A nexus between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction."). This inquiry is fact-intensive and consists of three steps: first, the Court asks whether the defendants have

purposefully directed their activities at the forum; second, the Court asks whether the claims arise out of or relate to those specific activities; finally, the Court must determine whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. See O'Connor, 496 F.3d at 317; De Lage Landen Fin. Servs. v. Donner Med. Mktg., Inc., No. 10-4108, 2010 WL 5136108, at *4 (E.D. Pa. Dec. 15, 2010) (Baylson, J.).

At the first step, the Court focuses on the non-resident defendants' contacts with the forum. Metcalfe, 566 F.3d at 334. In a contract case, the Court must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, the contemplated future consequences, and the parties' actual course of dealing. Remick, 238 F.3d at 255; Farino, 960 F.2d at 1223.

At the second step, in a contract case, courts should inquire whether the defendants' contacts with the forum were instrumental in either the formation of the contract or its breach. See Gen. Elec., 270 F.3d at 150.

Once the defendants' contacts are sufficient to establish specific jurisdiction, the Court will deny jurisdiction only if the defendants make a compelling case that litigation in the forum would be unreasonable and unfair. See O'Connor, 496 F.3d at 324. In making this determination, the Court should consider the following factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Farino, 960 F.2d at 1222 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). When minimum contacts exist, due process demands no more than a

reasonable forum. O'Connor, 496 F.3d at 324.

   4.   **Analysis**

Defendants contend they lack sufficient minimum contacts with Pennsylvania to subject them to the jurisdiction of its courts. Defendants rely on two cases from within this Circuit in support of their position – Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587 (3d Cir. 1982), and Roetenberg v. King & Everhard, P.C., No. 00-1452, 2000 WL 1705787 (E.D. Pa. Nov. 6, 2000) (Tucker, J.). (Mot. to Dismiss at 10-13.) Cohen Seglias, in turn, relies on Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), to argue that Defendants' cases are distinguishable and jurisdiction is proper. (Answer to Mot. at 9.)

In Remick, a Pennsylvania lawyer filed suit against Indiana and Illinois residents for breach of contract and other claims. 238 F.3d at 252, 254-55. After the defendants removed the matter to the Eastern District of Pennsylvania, they moved for dismissal for lack of personal jurisdiction. Id. at 252. The district court dismissed the matter, but the Third Circuit reversed, concluding personal jurisdiction existed. Id. at 252, 257. The Third Circuit relied on the following contacts in support of jurisdiction: the defendant directly solicited the plaintiff by placing a phone call to his office; the solicitation resulted in a fee agreement between plaintiff and defendant; defendant made at least one payment to plaintiff by sending it to Pennsylvania; plaintiff performed most of the services for defendant in his Pennsylvania office, which defendant should have expected; and plaintiff and defendant had repeated informational communications during the course of their contractual relationship. Id. at 256.

In reaching its decision, the Third Circuit distinguished Remick from Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147 (3d Cir. 1996), which

the district court relied on in dismissing the case. Remick, 238 F.3d at 256. Although Vetrotex concluded that occasional informational communications alone are not enough, 75 F.3d at 152, it qualified the reach of its decision by identifying facts which were lacking, e.g. the defendant's solicitation or initiation of the business relationship and transmission of payments to plaintiff into the forum state, id. at 152-53. The presence of those facts, among others, in Remick led the Third Circuit to conclude the district court had jurisdiction. Remick, 238 F.3d at 256-57.

In contrast, in Reliance Steel, a Pennsylvania resident sued its Missouri attorneys for work related to non-forum litigation. 675 F.2d at 587-88. The plaintiff solicited the representation, and the defendants' only contact with Pennsylvania was an advertisement seeking business in Missouri. Id. at 589. The Third Circuit concluded that this limited contact was not sufficient to justify the exercise of jurisdiction and noted that a resident's unilateral activity of soliciting a non-resident cannot satisfy the requirement of minimum contacts. Id.

In Roetenberg, a Pennsylvania resident sued her Virginia attorneys for work related to non-forum litigation. 2000 WL 1705787, at *1. Judge Tucker reviewed the defendants' alleged contacts with Pennsylvania, and determined the Court lacked jurisdiction over the defendants. Id. at *6. In particular, Judge Tucker found that the defendants have no business in Pennsylvania, are not licensed in Pennsylvania, and were working on non-Pennsylvania litigation. Id. at *4. Moreover, the Pennsylvania resident solicited the representation, and a forum resident's unilateral activity cannot establish the defendants' contacts with the forum. Id. (citing Hanson v. Denckla, 357 U.S. 235 (1958)). In addition, Judge Tucker concluded that the attorneys' occasional communications with Roetenberg, which were sent into Pennsylvania, were not sufficient without more to confer jurisdiction. Id. Finally, Roetenberg's use of a

-11-

Pennsylvania bank to make payments to the defendants constituted unilateral activity which could not establish the defendants' contacts with the forum. Id. at *5.

The facts of the present case, as alleged by Cohen Seglias, are more similar to those of Remick than those of Reliance Steel or Roetenberg. For instance, Cohen Seglias, like Remick, is based in Pennsylvania and alleges that Hessert solicited its representation. Moreover, Hessert even traveled to Pennsylvania for the parties' initial meeting and to negotiate the terms of the representation.[4] See Telcordia Tech Inc. v. Telkom SA, Ltd., 458 F.3d 172, 177 (3d Cir. 2006) ("Traveling to the forum to consult with the other party can constitute purposeful availment . . . ."). In addition, Cohen Seglias alleges that Hessert signed a representation agreement; Defendants sent ten years' worth of payments into Pennsylvania; Defendants engaged in informational communications via telephone and e-mail throughout the ten-year relationship; and Cohen Seglias performed much its work for Defendants in Pennsylvania. All of these facts were cited as bases for finding personal jurisdiction in Remick, 238 F.3d at 256, and were mostly absent in Reliance Steel, 675 F.2d at 589, and Roetenberg, 2000 WL 1705787, at *4-6.

Notably, Defendants do not dispute many of these facts.[5] Although, Hessert denies executing an agreement, he does not deny initiating and participating in a ten-year business relationship with a Pennsylvania entity – the existence of a written agreement is not dispositive. (Hessert Aff. ¶¶ 16-17.) Further, he does not deny attending the initial meeting in Philadelphia or

---

[4] Defendants do not contend that Hessert's and other employees' contacts with Pennsylvania are not attributable to Defendants. See Farino, 960 F.2d at 1226 n.5 (recognizing that agent contacts with forum are attributable to principal).

[5] Several of Hessert's declarations correspond to general jurisdiction arguments. (E.g., Hessert Aff. ¶¶ 2-4, 7-8.) Because Cohen Seglias has conceded it is pursuing only a specific jurisdiction theory, these declarations are immaterial to the Court's analysis.

sending payments into Pennsylvania. Also, he asserts that Defendants' personnel met with Cohen Seglias attorneys in New Jersey, but does not deny meetings also occurred in Philadelphia or that informational communications occurred between the parties in Philadelphia and New Jersey. (Id. ¶ 5.) In essence, Defendants do not dispute Cohen Seglias's factual allegations, but rather contend that their alleged contacts with Pennsylvania are not legally sufficient to confer jurisdiction.

Contrary to Defendants' position, the Court's exercise of personal jurisdiction over Defendants in this case is consistent with Third Circuit jurisprudence. Generally, "a contract, without more, is insufficient to establish minimum contacts, as are informational communications in furtherance of a contract." Metcalfe, 566 F.3d at 333 n.7 (quotation marks omitted). But in some instances, personal jurisdiction can arise primarily from a non-resident defendant's contract with a forum resident based on the terms of the agreement, the place and character of prior negotiations, and the parties' course of dealing. Remick, 238 F.3d at 256; see Gen. Elec., 270 F.3d at 150 ("Parties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking.") (quotation marks and alteration omitted). Further, although limited informational communications alone would not be sufficient, they do count toward the minimum contacts analysis. See Telcordia, 458 F.3d at 177.

In this case, Defendants solicited and initiated a business relationship with a Pennsylvania entity which lasted approximately ten years. See Farino, 960 F.2d at 1223 (noting non-resident defendant solicited and established ongoing business relationship with known Pennsylvania entity); see also Telcordia, 458 F.3d at 178 (distinguishing a long-term relationship, which

confers jurisdiction, from an isolated interaction of a supplier putting an item into the stream of commerce, which may not confer jurisdiction). Defendants then engaged in interstate informational communications throughout the relationship. Moreover, they made numerous payments into Pennsylvania over the course of the relationship, regardless of whether or not they made the most recent payments. See Farino, 960 F.2d at 1223 (citing non-resident defendant's correspondence and payments into Pennsylvania as factors for finding jurisdiction); see also Remick, 238 F.3d at 256 (stating court should consider parties' course of dealing). Finally, the fact that Cohen Seglias performed its work in Pennsylvania does not render it unilateral activity – Defendants contracted with the firm knowing it was a Pennsylvania entity and should have expected that the work would be performed there. See Remick, 238 F.3d at 256.

Furthermore, "physical presence of the defendant in the forum [is] not regarded as a jurisdictional litmus test." Farino, 960 F.2d at 1225. Because electronic communications are the standard in modern business relationships, actual territorial presence is less determinative when the parties have entered into a long-term business relationship. Gen. Elec., 270 F.3d at 150-51 (considering contractual relationship which lasted approximately five years). Therefore, Hessert's lone visit to Pennsylvania in 1999 to initiate the relationship does not undermine the Court's jurisdiction.

Nor does the fact that Cohen Seglias represented Defendants in New Jersey, rather than Pennsylvania, litigation undermine the Court's jurisdiction over Defendants. Reliance Steel and Roetenberg did not make this fact dispositive and Remick itself did not discuss the situs of the negotiations involved in that representation

Based on the foregoing, the Court concludes that Defendants "purposefully directed their

activities toward a Pennsylvania resident and thereby availed themselves of the opportunity to do business there" by soliciting and engaging in a long-term business relationship with a Pennsylvania entity, engaging in regular informative communications with the entity, remitting payments into Pennsylvania, and receiving the benefits of services performed in Pennsylvania. See Farino 960 F.2d at 1223 (concluding that by approaching resident plaintiff, non-resident defendants "knowingly established a business relationship with a Pennsylvania entity and knowingly created continuing obligations with a citizen of Pennsylvania") (quotation marks omitted).

As for the second step in the analysis, the Court concludes that this dispute arises out of Defendants' formation and eventual breach of the agreement because their contacts with the forum – directly soliciting the representation, negotiating the terms of the representation in Pennsylvania, and failing to make payment into Pennsylvania – were instrumental in the contract's formation and its breach. See Telcordia, 458 F.3d at 178 (holding breach occurred when non-resident defendant failed to pay into forum pursuant to parties' course of dealing).

Having concluded that Cohen Seglias has made out a prima facie case for personal jurisdiction, the burden shifts to Defendants to demonstrate a compelling case why Pennsylvania would be an unfair and unreasonable forum. Defendants assert that Pennsylvania has no interest in the litigation, that New Jersey law controls the substantive dispute, and that New Jersey has an interest in enforcing its rules for attorney ethics. (Mot. to Dismiss at 13-14.)

Notably, Defendants do not, and cannot, argue that a Pennsylvania forum imposes an unreasonable burden. Indeed, Hessert traveled to Philadelphia from New Jersey to commence the relationship. See Gen. Elec., 270 F.3d at 152 (noting representatives traveled to Pennsylvania

from Germany during relationship); see also O'Connor, 496 F.3d at 325 (finding Pennsylvania plaintiff would face as high a burden as Barbados defendant if required to travel). Further, and contrary to Defendants' argument, Pennsylvania has a "manifest interest in providing effective means of redress when a foreign corporation reaches into the state and solicits its citizens." See O'Connor, 496 F.3d at 325 (quotation marks omitted). Moreover, even assuming New Jersey law controls, the Court foresees no reason why a Pennsylvania court would be unable to apply New Jersey contract law. Finally, because Cohen Seglias performed much of its services in Pennsylvania, it has an "obvious interest in conducting this litigation there." See Gen. Elec., 270 F.3d at 152; De Lage Landen, 2010 WL 5136108, at *5. Most importantly, none of Defendants' arguments come close to making a "compelling" case that Pennsylvania is a constitutionally unreasonable forum.

Accordingly, Defendants' Motion will be denied with regard to personal jurisdiction. The Court notes, however, that it may revisit this issue if it appears that the facts alleged to support jurisdiction come into dispute. See Metcalfe, 566 F.3d at 331.

**B.  Cohen Seglias is not Precluded from Pleading Alternative Claims**

In its Amended Complaint, Cohen Seglias asserts claims for breach of contract, unjust enrichment, and quantum meruit. (Am. Compl. ¶¶ 15-25.) Defendants argue that the claims for unjust enrichment and quantum meruit are precluded under New Jersey law because Cohen Seglias has asserted a valid, unrescinded contract governs the rights of the parties. (Mot. to Dismiss at 14-15.) Cohen Seglias responds that it is precluded from recovering under all three theories, but it is permitted to plead alterative theories of relief. (Answer to Mot. at 13.)

It is unnecessary for the Court to determine whether New Jersey or Pennsylvania governs

Cohen Seglias's claims because the law is the same in each state – a party cannot recover under quasi-contract theories when a valid, unrescinded contract governs the rights of the parties. See Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006); Moser v. Milner Hotels, Inc., 78 A.2d 393, 394 (N.J. 1951) (per curiam). Nevertheless, under Federal Rule of Civil Procedure 8(d), a party is permitted to plead alternative and inconsistent theories of recovery, even if precluded from ultimately recovering under quasi-contract theories in light of a written contract. See, e.g., Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) (DuBois, J.).

Accordingly, Defendants' Motion to Dismiss the claims for unjust enrichment and quantum meruit will be denied.

### C. Hessert – PA was not Fraudulently Joined

Defendants contend that Cohen Seglias fraudulently joined Hessert – PA in this matter to defeat diversity jurisdiction. (Mot. to Dismiss at 15.) Cohen Seglias responds that it has a colorable claim against Hessert – PA and, regardless, Hessert – PA is not a Pennsylvania citizen for diversity purposes, so its presence would not render diversity incomplete. (Answer to Mot. at 11-12.)

The Third Circuit has held that the citizenship of an LLC for diversity purposes is determined by the citizenship of its members. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010). Cohen Seglias contends that the only member of Hessert – PA is William Hessert, a New Jersey citizen. (Answer to Mot. at 12.) Accordingly, the parties are completely diverse, undermining Defendants' basis for asserting fraudulent joinder.

Regardless, the Court does not agree that Hessert – PA was fraudulently joined. Joinder

is fraudulent if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek joint judgment. In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006). If there is even a possibility that a state court would find that the complaint states a cause of action against the defendant, the Court must find joinder proper. Id. at 217.

Defendants contend that the allegedly unpaid bills, which Cohen Seglias attached to its Amended Complaint, do not charge for work done on behalf of Hessert – PA. (Mot. to Dismiss at 15.) For example, Defendants assert that the attached bills concern work billed after November 2009, but Hessert – PA was dismissed from a lawsuit in September 2009. (Id.)

Cohen Seglias alleges that it entered into an agreement to perform legal services for Defendants in exchange for payment of fees, it performed legal services for Hessert – PA, and Hessert – PA failed to pay for those services. Assuming Cohen Seglias's allegations are true, it has raised a colorable contract claim against Hessert – PA. See Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (identifying elements for New Jersey breach of contract claim); Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (identifying elements for Pennsylvania breach of contract claim). Whether or not certain bills attached to the Amended Complaint charge for work related to Hessert – PA would require the Court to assess the merits of Cohen Seglias's claims, which the Court cannot do in this procedural posture. Defendants do not otherwise assert that Cohen Seglias joined Hessert – PA in bad faith. Because Cohen Seglias has asserted a colorable claim against Hessert – PA, there is no fraudulent joinder.

Accordingly, Defendants' Motion to Dismiss on this ground will be denied.

### D. Hessert Construction Group is not a Named Party

Defendants seek to dismiss Hessert Construction Group on the basis that it is a non-existent entity. However, Cohen Seglias did not file suit against Hessert Construction Group; rather, it avers that Defendants "do business under the name 'Hessert Construction Group.'" (Am. Compl. ¶ 6); see also Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (noting that, on motion to dismiss, court must assume veracity of plaintiff's allegations). Because Hessert Construction Group is not a named party, but is only an alleged alias for Defendants, the Motion to Dismiss on this ground will be denied.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 3) will be **denied**. An appropriate Order will follow.

O:\Todd\10-6183 Cohen Seglias v. Hessert et al\Cohen Seglias - MTD Memo - FINAL.wpd